1
2
3
4
5
6
7                          UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   RUBEN MEJIA,                              No.  2:15-cv-707-EFB

11                    Plaintiff,

12          v.                                 ORDER

13   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security
14
                     Defendant.
15

16

17          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner") denying his applications for a period of disability and Disability Insurance

19   Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

20   Social Security Act.  The parties' cross-motions for summary judgment are pending.  For the

21   reasons discussed below, plaintiff's motion for summary judgment is granted and the

22   Commissioner's motion is denied.

23   I.     BACKGROUND

24          Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that he had

25   been disabled since June 1, 2008.  Administrative Record ("AR") 232-244.  His applications were

26   denied initially and upon reconsideration.  *Id.* at 146-151, 153-158.  On April 30, 2013, a hearing

27   was held before administrative law judge ("ALJ") Jean R. Kerins.  *Id.* at 53-83.  Plaintiff was

28   represented by counsel at the hearing, at which he and a vocational expert testified.  *Id.*

On June 27, 2013, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1]  *Id.* at 35-45.  The ALJ made the following specific findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since June 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: history of bilateral knee surgeries, back pain and obesity (20 CFR 404.1520(c) and 416.920(c)).

* * *

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

* * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined under the Regulations except he is limited to frequent stooping, crouching, crawling and kneeling (20 CFR 404.1567(b) and 416.967(b).

* * *

6. The claimant is capable of performing past relevant work as a barista. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

* * *

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 37-45.

Plaintiff's request for Appeals Council review was denied on January 27, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

3

1    "The ALJ is responsible for determining credibility, resolving conflicts in medical

2    testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

3    2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

4    interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

5    *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

6    III.    ANALYSIS

7        Plaintiff argues that the ALJ erred by (1) finding that he did not have mental impairments

8    that impacted his ability to work, and (2) that the Appeals Council failed to provide sufficient

9    reasons for rejecting evidence.  ECF No. 20 at 5-12.

10       Plaintiff argues that the ALJ erred at step two and step four of the sequential evaluation

11   process by finding that his mental impairments did not limit his ability to work.  Plaintiff

12   contends that the ALJ erred in assessing his limitations by rejecting medical opinions from

13   treating, examining, and non-examining sources.

14       The weight given to medical opinions depends in part on whether they are proffered by

15   treating, examining, or non-examining professionals.  *Lester*, 81 F.3d at 834.  Ordinarily, more

16   weight is given to the opinion of a treating professional, who has a greater opportunity to know

17   and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

18   1996).  To evaluate whether an ALJ properly rejected a medical opinion, in addition to

19   considering its source, the court considers whether (1) contradictory opinions are in the record;

20   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

21   treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81

22   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining medical professional

23   may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.

24   *Id.* at 830.  While a treating professional's opinion generally is accorded superior weight, if it is

25   contradicted by a supported examining professional's opinion (e.g., supported by different

26   independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d

27   1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

28   /////

1    However, "[w]hen an examining physician relies on the same clinical findings as a treating

2    physician, but differs only in his or her conclusions, the conclusions of the examining physician

3    are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

4         Plaintiff received treatment from Dodie Newman, a speech pathologist.  Plaintiff was

5    diagnosed with acquired brain injury from carbon monoxide poisoning, which resulted in deficits

6    in cognitive communication.  AR  502.  Ms. Newman found that plaintiff's short term memory is

7    impaired and his cognitive endurance is poor, resulting in difficultly maintaining concentration.

8    *Id*. at 502.  It was her opinion that plaintiff had a good (limited but satisfactory) to fair (seriously

9    limited, but not precluded) ability to deal with work stresses and function independently.  *Id*. at

10   502.  She also opined that plaintiff had a fair ability to maintain attention/concentration and

11   understand, remember, and carry out complex jobs.  *Id*. at 502-503.  Ms. Newman also opined

12   that plaintiff would need to switch tasks after 15 minutes due to cognitive fatigue.[2]  *Id*. at 503.

13        Plaintiff underwent a psychological evaluation, which was completed by Dr. Jack Latow,

14   Ph.D.  *Id*. at 356-361.  Dr. Latow diagnosed plaintiff with major depressive disorder, moderate;

15   and cognitive disorder, mild to moderate.  *Id*. at 360.  It was his opinion that plaintiff could

16   perform simple, repetitive, one and two-step tasks; and detailed tasks, but would have moderate

17   difficulty with detailed and complex tasks due to his cognitive impairments and interference with

18   psychological symptoms.  *Id*. at 360.  He further opined that plaintiff would have moderate

19   difficulty managing the pace of a normal workday; moderate difficulty managing changes during

20

21        [2]  Ms. Newman holds a Certificate of Clinical Competence in Speech-Language Pathology
     ("CCC").  A speech-language pathologist holding a CCC is an acceptable medical source for
22   purposes of establishing speech or language impairments.  20 C.F.R. §§ 404.1513(a)(5),
     416.913(a)(5).  Plaintiff contends that Ms. Newman's opinion was a treating opinion because it
23   concerned plaintiff's cognitive-communication disorder.  ECF No. 20 at 13-14.  "Cognitive-
     communication disorders encompass difficulty with any aspect of communication that is affected
24   by disruption of cognition . . . . Cognition includes cognitive process and systems (e.g., attention,
     perception, memory, organization, executive functions).  Areas of function affected by cognitive
25   impairments include behavioral self-regulation, social interaction, activities of daily living,
     learning and academic performance, and vocational performance."  *American Speech-Language-*
26   *Hearing Association*, http://www.asha.org/policy/PS2005-00110 (last visited on September 11,
     2016).  The Commissioner does not dispute Ms. Newman's status as a treating source, but
27   contends that the ALJ did not error in rejecting her opinion.  As the parties do not dispute her
     status, the court considers Ms. Newman a treating source.
28

1    a normal workday; and significant difficulty managing the stress of a normal workday.  *Id*.  It was

2    also his opinion that plaintiff would be able to get along with other people.  *Id*.

3         The record also contains opinions from two non-examining physicians.  Based on his

4    review of the record, Dr. Timothy Schumacher, Ph.D., opined that plaintiff was moderately

5    limited in carrying out detailed instructions; maintaining attention and concentration for extended

6    periods of time; completing a normal workday and workweek without interruption from

7    psychologically-based symptoms; and performing at a consistent pace without unreasonable

8    number of rest periods.  *Id*. at 93-94.  He further opined that plaintiff was moderately limited in

9    interacting appropriately with the general public and accepting instructions and responding

10   appropriately to criticism from supervisors, but could engage in routine contacts with coworkers

11   and supervisors in settings where major collaboration with others is not involved.  *Id*. at 94.  Dr.

12   Michael Hammonds, Ph.D., a non-examining physician, agreed with Dr. Schumacher's opinion.

13   *Id*. at 125-126.

14        In assessing plaintiff's mental impairments, the ALJ summarized the opinions provided by

15   Ms. Newman, Dr. Schumacher, and Michael Hammonds.  Although each of these sources

16   concluded that plaintiff had at least moderate mental impairments, the ALJ determined that

17   plaintiff's mental impairments were not severe.  In reaching this conclusion, the ALJ gave no

18   explanation for why these opinions were rejected.  An ALJ, however, is not permitted to

19   disregard opinions from treating and examining sources without explanation.  *Lester*, 81 F.3d at

20   830 (An ALJ must provide specific and legitimate reasons for rejecting a treating or examining

21   medical professional's opinion); *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995) (An ALJ

22   "may not reject 'significant probative evidence' without explanation."); *see also* SSR 96-6p

23   (ALJs cannot ignore opinions from state agency physicians and psychologist and must explain the

24   weight given to these opinion in their decision).

25        The Commissioner argues that the ALJ properly rejected Ms. Newman's opinion because

26   subsequent treatment records indicated that plaintiff made steady gains in treatment and his

27   impairments improved.  ECF No. 21 at 10.  The ALJ, however, did not find that Ms. Newman's

28   opinion was inconsistent with treatment records demonstrating improvement.  *See Bray v.*

6

1    *Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of

2    administrative law require [the court] to review the ALJ's decision based on the reasoning and

3    factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the

4    adjudicator may have been thinking."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (a

5    district court is "constrained to review the reasons the ALJ asserts").  Accordingly, the

6    Commissioner's post hoc rationalization may not serve as a basis for rejecting these opinions.

7         The Commissioner further argues that any failure to explain why Ms. Newman's opinion

8    was rejected was harmless because Ms. Newman did not assess any impairment that would

9    preclude plaintiff from performing her past work as a barista.  ECF No. 21 at 10.  The

10   Commissioner explains that "according to the Dictionary of Occupational Titles (DOT), a

11   barista's job functions are limited to accepting and calling orders, serving customers, processing

12   payment, preparing short order items, and cleaning" and that these "tasks are not implicated by

13   Ms. Newman's opinion."  *Id*. at 11.  This argument requires the court to speculate as to why the

14   ALJ rejected Ms. Newman's opinion.

15        Ms. Newman opined that plaintiff has serious limitations in maintaining attention and

16   concentration, and that plaintiff would need to switch tasks after 15 minutes due to cognitive

17   fatigue.  *Id*. at 503.  The vocational expert did not testify that an individual with such impairments

18   could work as a barista, and there is no evidence that an individual with this impairment would be

19   able to do so.  *See id*. at 74-82 (transcript of vocational expert's testimony); *see also Tackett v.

20   Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (An ALJ may rely on a vocational expert "to testify as

21   to . . . what jobs the claimant, given his or her functional capacity, would be able to do . . . .").

22   Accordingly, the ALJ's failure to provide legally sufficient reasons for rejecting Ms. Newman's

23   opinion was not harmless.

24        The only opinion addressed by the ALJ was Dr. Latow's opinion, which the ALJ accorded

25   reduced weight.  Plaintiff argues that the ALJ's reasons for rejecting Dr. Latow's opinion are

26   insufficient and not supported by substantial evidence.  The court need not decide whether the

27   reasons were sufficient because, even assuming that they were, the ALJ failed to give any

28   justification for rejecting the other medical opinions concluding that plaintiff had moderate

1  mental impairments.  Accordingly, the ALJ's finding that plaintiff's mental impairments are not

2  severe is not supported by substantial evidence and this case must be remanded for further

3  consideration of plaintiff's mental impairments.[3]  *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th

4  Cir. 2015) ("Unless the district court concludes that further administrative proceedings would

5  serve no useful purpose, it may not remand with a direction to provide benefits.").

6  IV.   <u>CONCLUSION</u>

7        Accordingly, it is hereby ORDERED that:

8        1.  Plaintiff's motion for summary judgment is granted;

9        2.  The Commissioner's cross-motion for summary judgment is denied;

10       3.  The matter is remanded for further proceedings consistent with this order; and

11       4.  The Clerk is directed to enter judgment in plaintiff's favor.

12  DATED:  September 22, 2016.

13

14                                   EDMUND F. BRENNAN
                                     UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27       [3]  The court does not address plaintiff's remaining argument that the Appeals Council
    failed to properly consider evidence plaintiff submitted after the ALJ's decision issued.  ECF No.
28  20 at 16-18.  The ALJ will be able to address in the first instance any new evidence on remand.

8